UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| STRATEGIC ALLIANCE PARTNERS, LLC, | : | 04 Civ. 4588 |
| | : | |
| Plaintiff, | : | |
| | : | MEMORANDUM |
| v. | : | DECISION AND |
| | : | ORDER |
| DRESS BARN, INC. and DUNNIGAN REALTY, | : | |
| LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

STEPHEN C. ROBINSON, District Judge:


This action arose from Defendant's purchase of a warehouse in which it was the largest

tenant.  Plaintiff has sued alleging that it is owed a one percent commission from the sale,

claiming they introduced the Defendant to the concept of buying the warehouse and prepared a

detailed financial analysis which made the value of such a purchase apparent.  Plaintiff also

alleges that it was instrumental in putting the parties together.  Defendant now moves to dismiss

each cause of action—breach of contract, fraud, and unjust enrichment—arguing that they would

have discovered that the warehouse was for sale and would have performed its own analysis of

the financing opportunities.


## I.      Background

Plaintiff Strategic Alliance Partners, LLC ("Strategic") has brought an action against

Defendants Dress Barn, Inc. ("Dress Barn") and Dunnigan Realty, LLC, for failure to pay a

commission related to a real estate transaction.[1]  Strategic has three causes of action:  1) Breach of Contract; 2) Fraud; and 3) Unjust Enrichment/Quantum Meruit.  Specifically, Strategic claims it is owed a 1% commission on the sale of a warehouse to Dress Barn because Strategic and Dress Barn had an oral brokerage agreement.  Due to allegedly cutting Strategic out of the deal, Strategic further contends that Dress Barn acted fraudulently and was unjustly enriched since, in the end, Dress Barn did purchase the warehouse.

### A.        Prior to the Instant Strategic-Dress Barn Relationship

Strategic is a licensed real estate broker and a New Jersey limited liability company that brokers the sale and lease of property in the NYC metropolitan area.  Strategic's Executive Managing Partner, Burton Gubenko ("Gubenko"), became involved with the property in 1990 while with another firm.  He was hired by the property owner to effectuate the sale or lease of the property.  Accordingly, he was involved in several transactions in the 1990's including representing the owner in negotiations and execution of a lease with Dress Barn.  Following that lease transaction, Dress Barn became the largest tenant in the warehouse.

### B.        The Relationship between the Parties and Resulting Transaction

Dress Barn now owns the property and remains its largest tenant.  Dress Barn purchased the property from the owner, Clarion Partners ("Clarion").  Much of this transaction was administered for Dress Barn by its Chief Financial Officer, Armand Correia ("Correia").   The events leading up to this transaction are the subject of this litigation.

Strategic claims that Clarion began efforts to sell the property in August 2002.  At that time, Gubenko met with Clarion representatives who stated that the seller and purchaser would have separate brokers and that Clarion would pay its broker a 1% commission fee.  Gubenko

---

[1] Dunnigan Realty is a wholly-owned subsidiary of Dress Barn.  For purposes of this memo, only Dress Barn is referred to in order to simplify the facts.

believed that Dress Barn would be "an obvious choice as a potential purchaser." Dress Barn claims that it would have discovered that the property was for sale: "[I[t is unreasonable to think that the largest tenant…would not be alerted by the property manager that the property was for sale." In a letter to Strategic, Correia stated: "As you know Dress Barn has been aware that the owner of the facility was interested in selling for quite some time. In fact, our Corporate Counsel, Chris McDonald, has been in communication directly with Clarion over the past several years."

Shortly after the meeting with Clarion, it is agreed that Gubenko contacted Correia regarding the potentiality of purchasing the warehouse on September 23, 2002. On September 25, Correia contacted Gubenko to express interest in purchasing the warehouse. They agreed to meet on October 2, 2002. Gubenko wrote Correia a letter in preparation for that meeting dated September 30, 2002. It is disputed whether the letter was sent prior to the meeting (Dress Barn's claim) or given to Correia by Gubenko at the meeting (Strategic's claim). In any case, the letter touted the economic advantages that would occur if Dress Barn acquired the building. Gubenko stated that this letter was included as a cover sheet for the presentation packet and not sent beforehand. The relevant portion of the letter cited by both parties is the third paragraph that begins "[t]o assist you in making an intelligent evaluation concerning the acquisition, we have provided you with a fairly accurate picture of the lease summaries for [the other tenants]."

At the October 2nd meeting, the parties basically agreed to what happened but interpret those actions and words quite differently. As the meeting began, Correia inquired as to Strategic's commission. Gubenko replied that the commission would be 1% of the purchase price. Following the answer, Correia requested that Gubenko present Strategic's analysis of the acquisition. Here the parties diverge. Strategic claims that "Correia's conduct in accepting the

Analysis was his acceptance of the commission proposal." Dress Barn disagrees. Either way, Gubenko gave an arguably detailed presentation to Correia regarding the beneficial consequences that would follow the contemplated acquisition. After the meeting, Gubenko did not hear from Correia and eventually called him on October 17, 2002. Correia stated that Dress Barn would not be seeking Strategic's assistance in the purchase. A letter, dated October 21st, was sent by Correia to Gubenko expressing Dress Barn's preference not to hire a broker for the proposed transaction. As previously stated, Dress Barn purchased the warehouse on January 28, 2003.

## III. Motion to Dismiss

### A. The 12(b)(6) Standard

Dress Barn has moved to dismiss plaintiff's entire complaint with prejudice and without leave to appeal under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Dismissal of a complaint pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and *Cooper v. Parsky* 140 F.3d 433, 440 (2d Cir. 1998). For purposes of deciding a 12(b)(6) motion, the well-pleaded factual allegations of the complaint are assumed to be true, *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 87-88 (2d Cir. 1999), and the Court draws all reasonable inferences in favor of the non-movant. *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir. 1996). The court may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Id.* at 891. Plaintiff's allegations should be read

liberally and construed in the light most favorable to them.  *Schuer v. Rhodes*, 416 U.S. 232, 235-37 (1974).

**B.      Motion to Dismiss**

A motion to dismiss may be characterized as a motion for summary judgment.   Rule 12(b)(6) states that when matters outside the pleadings are considered, the court must utilize the standards for summary judgment.  The Court may characterize the motion independently.  In the end, however, the "legal inquiry for these motions may be similar since facts are not material under Rule 56 if they carry no legal import."  Matthew Bender, FEDERAL STANDARDS OF REVIEW § 5.01 (2003).

Dress Barn claims that it is a motion to dismiss.  Strategic, on the other hand, argues that the motion should be treated as a motion for summary judgment because Dress Barn "offer[s] as evidence matters that are not contained in the pleadings, nor even referred to therein."  Strategic asserts that if the motion is construed as a motion for summary judgment, then it "must be denied in light of the fact that no discovery has occurred and there are genuine disputes as to the material facts of this case."

The rule is simple:  "If, on a motion [12(b)(6)], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  F.R.C.P. 12(b).  Dress Barn has introduced materials outside of the pleadings, namely the two letters dated September 30, 2002, and October 21, 2002.  The Court excludes these letters from its review and relies on statements made about the letters as stated in the pleadings.

### C. Analysis

#### 1. Breach of Contract

In the complaint, Strategic clearly states that the agreement was made orally and/or by conduct but not in writing. An oral brokerage agreement is enforceable under New York law and does not violate the Statute of Frauds. N.Y. CLS GEN. OBLIG. § 5-701. Strategic asserts the existence of an oral contract in the complaint and in Gubenko's affidavit. The claim for a brokerage commission in New York consists of 3 elements, that: 1) the broker is duly licensed; 2) an express or implied contract existed; and 3) the broker was the procuring cause of the sale. *Buck v. Cimino*, 243 A.D.2d 681, 684 (2d Dep't 1997). The first element is undisputedly met. The second and third elements are more challenging.

Strategic alleges that there was an implied contract and that Strategic was the procuring cause of Dress Barn's eventual purchase of the warehouse. The implied contract was formed, according to Strategic, at the October 2nd meeting. The complaint reads: "Correia requested that Mr. Gubenko advise him as to Strategic's commission for representing Dress Barn in the potential purchase. At the outset, and before providing Correia with his analysis, Gubenko stated that the commission would be 1% of the purchase price…Correia agreed to the commission by requesting the written analysis prepared by Gubenko." Strategic essentially argues that the request after hearing the commission rate equaled consent through conduct. Dress Barn contends that no assent was demonstrated by spoken words or conduct. It is plausible that Strategic may prove an agreement was made at the meeting.

Third, Strategic's claim must show that it was the procuring cause of the sale. Strategic adequately alleges that it introduced Dress Barn to the idea of acquiring the building after meeting with Clarion. Strategic also gave Dress Barn a financial analysis on how to go about

performing the transaction. According to the facts as alleged by Strategic, it is plausible that Dress Barn did not know or had not yet discussed the opportunity to purchase the property or the financing options available to it. "[I]t has long been recognized that there must be a direct and proximate link, as distinguished from one that is indirect and remote, between the bare introduction and the consummation." *Greene v. Hellman*, 51 N.Y.2d 197, 206 (1980). "The duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue." *Sibbald v. Bethlehem Iron Co.*, 83 N.Y. 378, 382 (1881). Based on the facts as alleged in the complaint, Strategic notified Dress Barn that the warehouse was for sale and introduced Dress Barn to the idea of purchasing the building. Strategic also provided Dress Barn with a detailed financial analysis and information on the warehouse, including previous sales and current tenants and their leases. Strategic alleges that this packet of information was extensive and provided the Dress Barn with more than the basic information about the building. *See Brown & Son Realty v. Greenberg,* 195 A.D.2d 583, 584) (providing potential buyer with limited information is insufficient). These actions allegedly were taken by Strategic only after meeting with the representatives of Clarion about the sale of the property.

Strategic admits it was not involved in any of the negotiations that took place between Dress Barn and Clarion at the time of the purchase. Dress Barn cites this fact as a reason for not deeming Strategic as the procuring cause of the transaction. Although the complaint would be stronger if Strategic were involved in the negotiations or explicitly set up a meeting between the two parties, such an allegation is not necessary to state a claim for breach of contract. "A broker, in order to qualify for a commission, need not necessarily have been involved in the ensuing negotiations or in the completion of the sale. However, if the broker does not participate in the

negotiations, he must at least show that he created an amicable atmosphere in which negotiations proceeded or that he generated a chain of circumstances that proximately led to the sale. *Buck v. Cimino*, 243 A.D.2d 681, 684 (2d Dep't 1997) (internal citation and quotation marks omitted). Here, Strategic has adequately alleged that Gubenko met with Clarion to discuss potential buyers, notified Dress Barn that the warehouse was available for purchase, Gubenko persuaded Correia to meet with him to discuss the potential sale, Strategic provided Dress Barn with a detailed analysis on how the deal could be structured after Gubenko thought Strategic had been hired as broker, and discussed the opportunity for Dress Barn at a meeting with Correia. A few weeks after the meeting, Correia informed Gubenko that Dress Barn would not be using Strategic's services and allegedly "questioned why the Dress Barn should deal with Strategic when they could go directly to Clarion's broker." Negotiations ensued between Dress Barn and Clarion, and the acquisition was complete by January 2003. Strategic also points out that the property was purchased under virtually identical terms as Gubenko had recommended and that Clarion intended to sell the Property to a CAP rate purchaser such as a Real Estate Investment Trust and would not have otherwise reached out to Dress Barn. Strategic has adequately alleged that they generated the chain of circumstances leading to the sale. Therefore, Strategic has successfully alleged the third element—that it was the procuring cause of the sale—in its complaint. Accordingly, Strategic has adequately alleged a cause of action for breach of contract.

### 2.    Fraud

To state a claim of fraud under New York law, a complaint must allege that: 1) defendant made a material misrepresentation of fact; 2) the misrepresentation was offered to defraud, mislead, deceive, or induce the other party to act; 3) plaintiff reasonably relied on the

misrepresentation; and 4) the misrepresentation caused said party injury. *See P.T. Bank Cent. Asia v. ABN Amro Bank, N.V.*, 301 A.D.2d 373, 376 (1st Dep't 2003). Strategic alleges that Correia's action—the acceptance of the financial analysis after Gubenko stated Strategic's commission rate—was a representation of fact. It is alleged that Correia's conduct constituted a misrepresentation in that he represented that Dress Barn hired Strategic as its broker while knowing that this was false. Correia did not make any statement to that effect, however. After hearing the commission rate, he asked for the analysis prepared by Gubenko. The question is whether Correia's conduct in asking for the analysis may constitute a representation of fact.

Silence as an omission of fact or concealment of fact may constitute a fraud claim in the context of a special or fiduciary relationship. *See Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, Nat'l Assoc.*, 731 F.2d 112, 122-123 (2d Cir. 1984). Knowing that a person is acting under a mistaken belief with respect to the material fact may also constitute fraud. *Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275, 283 (2d Cir. 1975). Before such an omission can be labeled fraudulent, however, a duty to disclose the fact must exist between the parties. *Aaron Ferer & Sons*, 731 F.2d at 122-123. The complaint fails to allege that there was a sufficient relationship between Dress Barn and Strategic such that a duty to disclose existed. Because no such duty ran from Dress Barn to Strategic, Strategic's fraud claim must be dismissed.

### 3. Unjust Enrichment/Quantum Meruit

These two claims are essentially one in the same; as a result, Strategic's two separate causes of action are consolidated into one for purposes of this decision. Under New York law, Strategic must allege that: 1) Dress Barn was enriched; 2) such enrichment was at Strategic's expense; and 3) "circumstances were such that in equity and good conscience [Dress Barn] should compensate [Strategic]. *R.B. Ventures, Ltd. V. Shane, et al.*, 112 F.3d 54, 60 (2d Cir.

1997). Claims for unjust enrichment/quantum meruit do not hinge on the existence of an agreement. *Grappo v. Alitalia Linee Aeree Italiane, S.P.A.*, 56 F.3d 427, 433 (2d Cir. 1995). In fact, the existence of an express contract would preclude such a claim. *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir. 1988). However, an express contract has not been alleged here. While Strategic's pitch and statement as to its commission rate could be construed as an offer, Dress Barn's behavior, could be found to equal consent, would have lead to an implied contract to an oral brokerage agreement.

Strategic claims it set in motion the chain of events leading to Dress Barn's purchase but then was cut out of the transaction. Strategic alleges that by notifying Dress Barn as to the warehouse's sale, informing Dress Barn as to the financial gains to be had in purchasing the warehouse, and providing Dress Barn with detailed analysis of how the acquisition would benefit Dress Barn, it was the procuring cause of the transaction. "A broker earns his commission when a sale is effected through his agency as the procuring cause." New Spectrum Realty Services, Inc. v. Nature Co., 42 F.3d 773, 776 (2d Cir. 1994).

The essence of an unjust enrichment claim rests in equitable justice. It gives the plaintiff a quasi-contract claim against the defendant who takes riches unjustly and thereby owes the plaintiff. It was described almost 90 years ago as follows:

> A quasi or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which ex oequo et bono belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy.

*Miller v. Schloss*, 218 N.Y. 400, 407 (1916).

Here, Strategic claims that Dress Barn was unjustly enriched by refusing to pay Strategic the 1% commission owed to them for brokering the deal. Having found that Strategic's breach of an implied contract claim has been adequately alleged, it follows that Strategic has sufficiently alleged a claim against Dress Barn for failing to pay an extra 1% commission on the sale price. Dress Barn not only benefited monetarily but also more generally because, according to the complaint, Dress Barn executives were unaware of acquisition opportunity and that Strategic provided a detailed financial analysis on how to finance the project—something Dress Barn allegedly had not done before. Although Dress Barn was the largest tenant in the warehouse, Clarion was allegedly looking to sell the property to a wholly different type of organization. As for the second element, Strategic has adequately alleged that it spent its own resources on communicating with Clarion and Dress Barn, meeting with Dress Barn, and developing the financial analysis for Dress Barn and, therefore, has lost the commission at its own expense. The Court also finds that Strategic has adequately alleged that it would be unjust to permit Dress Barn to receive the benefit without compensation. Accordingly, Dress Barn's motion to dismiss Strategic's claims for quantum meruit and unjust enrichment is denied.

## IV.  Conclusion

Based on the foregoing, Defendant's motion to dismiss is hereby granted in part and

denied in part.  Defendant's motion to dismiss Plaintiff's fraud claim is granted.  Defendant's

motion to dismiss Plaintiff's breach of contract and quantum meruit/unjust enrichment claim is

denied.


IT IS SO ORDERED.

_____
Stephen C. Robinson, U.S.D.J.

Dated:  White Plains, New York

_____, 2005